UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  04-21160-CIV-MORENO**

SCHECK INVESTMENTS, L.P., et al.

    Plaintiffs,

v.

KENSINGTON MANAGEMENT, INC., et al.

    Defendants.

_____/

**ORDER APPROVING CLASS ACTION SETTLEMENT**

Lead Plaintiffs Scheck Investments, L.P., Elena Parrales, individually and on behalf of Franova Investment Ltd., The PMT Irrevocable Trust, Juan Manuel Ponce De Leon, and Maria Paulina Ponce De Leon Uribe, individually and on behalf of all Class Members similarly situated, and Roberto Martinez, as court-appointed Receiver of Mutual Benefits Corp. (MBC) and other related entities, have submitted for final approval the settlements with Defendants Citibank, N.A., Union Planters, N.A. and American Express Tax and Business Services Inc. n/k/a RSM McGladrey, Inc. ("AETBS") (the "Bank Defendants"), set forth in the parties' Stipulations of Settlement dated November 13, 2008.  Class Counsel have also moved for an award of attorneys' fees and expenses.

For the reasons set forth in detail below, the Court has determined that the Settlements are fair, reasonable and adequate, and should therefore be approved.  The Court has also determined that Class Counsel's Motion for Fees and Expenses should be granted.  Accordingly, this Court enters this Order and a separate Final Judgment, approves the Settlements, certifies the Settlement Class,

approves an award of attorneys' fees and expenses, and dismisses this action against the Bank Defendants with prejudice, and therefore;

**IT IS HEREBY ORDERED AND ADJUDGED THAT**:

1. This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

2. On March 10, 2009, the Court held a hearing to consider the fairness, reasonableness and adequacy of the proposed Settlements.

3. In reaching its decision, the Court considered the Settlement Agreements, the single objection to the Settlements filed with this Court by a Class Member, the objections to the attorneys' fees, the extensive Court file in this case and related MBC cases, and the presentations by Class Counsel, the Receiver, and Counsel for the Bank Defendants in support of the fairness, reasonableness and adequacy of the Settlements.

### Class Certification

4. The Settlement Class is defined in the Settlement Agreements to include: "All persons who purchased, between October 1, 1994 and May 4, 2004, interests in discounted life insurance policies known as viatical settlements or life settlements from MBC or Viatical Benefactors, LLC ("VBLLC") and have been damaged thereby. Excluded from the Class are: Defendants, MBC and any agent or broker who offered to sell viatical settlements or life settlements through MBC or VBLLC, including any of the foregoing companies' respective subsidiaries, affiliates, officers, agents or employees."

5. In its December 10, 2008, Order Certifying Settlement Class and Preliminarily Approving Proposed Settlements, for purposes of the Settlements only, the Court conditionally

certified the Settlement Class ("Class"), solely with respect to the Settling Defendants, under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. In entering this Order and Final Judgment, the Court has once again considered the class certification prerequisites set forth in Rule 23(a) and (b)(3) and again finds that these prerequisites are satisfied in this case.

6. The Court now affirms its prior Settlement Class certification, which was conditional pending further review, and finds that: (a) the Class is so numerous that joinder of all members is impracticable; (b) there are questions of both law and fact common to the Class; (c) the Lead Plaintiffs' claims are typical of the claims of all members of the Class; and (d) the Lead Plaintiffs and Class Counsel have fairly and adequately represented and will fairly and adequately protect the interests of the Class, all pursuant to Fed. R. Civ. P. 23(a).

7. The Court additionally finds that questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that this class action is superior to other available methods for the fair and efficient adjudication of this controversy, pursuant to Fed. R. Civ. P. 23(b). In making the latter determination the Court has considered the following: (a) the interest of members of the Class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the Class; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. The Class, as defined above, is now finally certified for purposes of the Settlements.

8. Twenty Nine (29) Class Members have timely and properly requested to be excluded from the Settlements; their names are listed on Exhibit 1 attached hereto. The Class Members on

Exhibit 1 are not bound by the Settlements, not bound by this Order nor the separate Final Judgment, not subject to this release, and thus are not entitled to participate in the distribution of the Settlement Fund. Class Counsel has informed the Court that one other Class Member sent in a request for exclusion after the Court-ordered deadline. That untimely request for exclusion shall be deemed ineffective; the Class Member shall be bound by the Settlements, bound by this Final Order and Judgment, subject to the release included herein, and have the opportunity to participate in the distribution of the Settlement Fund.[1] Class Counsel shall promptly notify that Class Member of the Court's decision regarding this matter.

### Notice to the Class

9. In its Preliminary Approval Order, this Court approved the Notice of Pendency of Class Action, Proposed Settlements and Final Hearing attached to Class Counsel's motion, and found that the proposed form satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

10. As set forth in the affidavit of Claims Administrator Marcia A. Uhrig of The Garden City Group, timely Notice was provided by first class mail, postage prepaid, to each Class Member at the last known addresses. As of the date of the mailing, December 19, 2008, there were 32,509 investors in MBC's database.

---

[1] In the Preliminary Approval Order (at ¶ 14), the Court stated that "[a]ny potential member of the Class that does not properly and timely mail a Notice of Exclusion shall be included in the Class, and shall be bound by all the terms and provisions of the Settlement Agreements, whether or not such potential member of the Class shall have objected to the Settlements, whether or not such potential member of the Class received actual notice, and whether or not such potential member of the Class makes a claim upon or participates in the Settlements."

11. The mailing was completed on December 19, 2008. Spanish translations of the Notice were also sent.

12. The Receiver and Class Counsel also caused the Notice to be put on the Receiver's Website - www.mbcreceiver.com.

13. Attorneys from Class Counsel's offices responded to the Class Members who contacted them with questions regarding the proposed Settlements.

14. A small number of investors responded to the Notice by filing exclusions and some have commented in support of the Settlements. One Class Member filed an objection to the Settlements and several Class Members submitted letters objecting to Class Counsel's fee request.

15. The Court finds that reasonable and the "best practicable" notice was given to the Class and that the Notice was "reasonably calculated" under the circumstances to: (a) describe this case and Class Members' rights in it; and (b) apprise interested parties of the pendency of this case and of their right to have their objections to the Settlements heard. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985); *accord* Fed. R. Civ. P. 23(c)(2) ("best notice practicable under the circumstances, including notice to all members who can be identified through reasonable effort," shall be given to class members); Fed. R. Civ. P. 23(e) ("notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."). The Notice was reasonably calculated to advise each member that: (a) the Court would exclude the member from the Class if the member so requested by a specified date; (b) this Order and the separate Final Judgment, whether favorable or not, would include all Class Members who did not request exclusion; and (c) any Class Member who did not request exclusion could, if the Class Member desired, enter an appearance. The Court thus reaffirms its findings that the Notice and the

notice methodology implemented constitute due, adequate and sufficient notice to all persons entitled to receive notice and meet the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure and all other applicable laws, and holds that it has personal jurisdiction over all Class Members.

### The Settlements

16.     The Settlements include the establishment of a total common fund in the amount of Nine Million Seven Hundred and Fifty Thousand ($9,750,000) for the benefit of the Class. This amount in addition to any earned interest, less Class Counsel's fees and expenses as awarded by the Court, and less the costs and expenses associated with sending out the Notice and administering the Settlements, and less any reasonable costs, expenses and taxes associated with escrowing the Settlement Fund, shall be distributed to Class Members based upon a distribution plan to be reviewed and approved by the Court. In return, all claims alleged by Lead Plaintiffs and the Class, and that could have been alleged by the Receiver, against the Bank Defendants shall be dismissed with prejudice.

17.     The Court must determine whether the proposed Settlements are "fair, adequate and reasonable and . . . not the product of collusion" between the parties. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981). In making this determination, the Court considers six factors: (1) the likelihood that Plaintiffs would prevail at trial; (2) the range of possible recovery; (3) the fairness of the Settlements compared to the range of possible recovery, discounted for the risks associated with litigation; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the Settlements; and (6) the stage of the proceedings at which the Settlements were achieved.

*Bennett*, 737 F.2d at 986; *Corrugated Container*, 643 F.2d at 212; *Behrens v. Wometco Enters, Inc.*, 118 F.R.D. 534, 538-90 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

18. This Court, after considering the aforementioned factors, finds that the Settlements provide for a reasonable and adequate recovery that is fair to all Class Members. *See Bennett*, 737 F.2d at 986-87.

19. The Court's review of the file demonstrates that there remains significant risk and uncertainty associated with on-going litigation as to whether Lead Plaintiffs will ultimately prevail on their claims against the Bank Defendants. The Settling Parties have denied any wrongdoing, asserting numerous defenses, and had the parties not reached a settlement, the Bank Defendants were prepared to continue vigorously defending themselves in this case. Given the open issues associated with continued litigation against the Bank Defendants, including summary judgment proceedings, trial and appeals, the creation of a $9,750,000 common fund represents an excellent result. *See Bennett*, 737 F.2d at 986-87. The Settlements eliminate a significant risk that the Class would walk away empty-handed with respect to their claims against the Settling Parties. *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992). In addition to the possibility of no recovery at all, the Bank Defendants each claim to have had a limited role for a limited period of time, and would, absent settlement, likely seek a limitation of the damages that can be recovered against them. The Settlement amounts are fair, adequate and reasonable when considering the range of possible recovery and the risk of no recovery at all. Lead Plaintiffs have achieved an excellent result for the Class Members – one that will provide the Class with a substantial monetary recovery and avoid the possibility of further complex, lengthy and expensive litigation between these parties that could result in no or a lower recovery.

20. Also weighing in favor of approving the Settlements is the fact that out of 32,509 investors, just one investor filed an objection to the Settlements with this Court. This fact weighs heavily in favor of approving the Settlements. *Bennett*, 737 F.2d at 988 n.10 (holding that the district court properly considered the number of objections in approving a class settlement). The Court has considered this single objection, finds it unpersuasive, and the objection is hereby overruled.

21. This Court may also consider the opinions of the parties and their counsel. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir.), *cert. denied*, 459 U.S. 828 (1982). Here, Class Counsel, the Receiver, and the Receiver's counsel all have considerable experience in the prosecution of large, complex class actions. Counsel for the Settling Parties are likewise experienced in complex litigation. This Court gives credence to the opinions of these counsel, as articulated in open court by Mr. Hanzman, Mr. Diaz and Mr. Martinez consistent with the Court's own independent review during the long pendency of this case for the last five years. The Court concludes that the Settlements are a beneficial resolution of the claims alleged by the Class against the Bank Defendants. And, the parties' decisions to settle were informed by substantial and lengthy litigation.

22. In addition to finding the terms of the proposed Settlements fair, reasonable and adequate, this Court must determine that there was no fraud or collusion between the parties or their counsel in negotiating the Settlements' terms. *Bennett*, 737 F.2d at 986; *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428-29 (5th Cir. 1977). In this case, there is no suggestion of fraud or collusion between the parties.

23. Based on the above findings, the Court approves the terms of the Settlement Agreements as fair, reasonable, adequate and in the best interests of the Class. The Settlements shall

be complied with and consummated in accordance with the terms and conditions of the Settlement Agreements. The Settlement Agreements are approved and adopted as an Order of this Court. The Settlement Agreements are binding on all Class Members other than those who have timely and properly excluded themselves from the Settlement Class listed on Exhibit 1, and preclusive on all pending and future lawsuits or other proceedings. The Court directs all of the Parties and their Counsel to cooperate with the consummation of the terms of the Settlement Agreements.

## Request for Attorney Fees and Expenses

24. Class Counsel request that the Court award attorneys' fees and expenses amounting to 30% of the $9,750,000 Settlement Fund. The Settlement Agreements provide and the Class Members were informed in the Notice that Class Counsel will make an application to this Court for an award of attorneys' fees not to exceed 30% of the Settlement Fund. Class Counsel's fee request is fully supported, reasonable and warranted under the governing standards.

25. Pursuant to *Camden I Condominium Assoc. v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991)*,* an attorneys' fee award should be "based on a reasonable percentage of the fund established for the benefit of the class." The Court has applied all of the relevant *Camden I* factors to the circumstances of this case in general, and in particular, these Settlements, and it finds the following facts relevant to its decision:

a. Although this case came after the Securities and Exchange Commission filed its case, Class Counsel sued the Bank Defendants, which were not parties to the SEC lawsuit.

b. Although Lead Plaintiffs and Class Counsel were not required to participate in the SEC lawsuit (Lead Plaintiffs are not parties to the SEC lawsuit), they did not simply sit back and let the Government argue the Class's cause alone in connection with one of the most crucial issues in this

case – whether MBC viatical settlements were securities. Instead, Class Counsel filed three amicus briefs, and participated in oral argument, in support of the Class's position that MBC viatical settlements are in fact securities. The finding by the Court that they were securities was crucial to grant the Court jurisdiction. Such legal conclusion by this Court was a case of first impression in this Circuit and was contrary to the law of the District of Columbia Circuit.[2]

c. Class Counsel pursued the claims against the Bank Defendants for well over four years, and have collectively expended over 10,000 hours litigating all aspects of this case.[3]

d. The case was broad, complex and challenging, and the opposition was formidable. Class Counsel relentlessly brought and pursued this case over numerous hurdles to the point where settlements with the Bank Defendants could be reached. The case included a tremendous amount of litigation over sophisticated, novel and difficult questions, including the ability to hold the Bank

---

[2] *Securities and Exchange Commission v. Mutual Benefits Corp., et al.,* 323 F.Supp.2d 1337 (S.D. Fla. 2004); *Securities and Exchange Commission v. Mutual Benefits Corp., et al.,* 408 F.3d 737 (11th Cir. 2005); *Securities and Exchange Commission v. Life Partners, Inc.,* 87 F.3d 536 (D.C. Cir. 1996).

[3] Class Counsel have summarized their efforts to include, among other things: briefing and argument on the securities issue in the SEC action; researching the facts surrounding the claims in this case including those against the Settling Parties; developing the legal theories, drafting and revising the complaint on multiple occasions, culminating in the 113 page Third Amended Complaint; defending numerous motions to dismiss at multiple stages and addressing and overcoming the Magistrate's reports and recommendations, which involved extensive legal research, briefing and oral argument; extensive factual investigation, including, without limitation, reviewing, culling through and analyzing thousands among tens of thousands of pages of documents, interviewing, consulting with and gathering and analyzing information from Plaintiffs, other Class Members and other potential witnesses; exchanging information with the defendants; preparing discovery, preparing responses to numerous written discovery requests and conducting depositions; constantly communicating with the investor Class in a wide range of case-related issues; consulting with a variety of experts; protracted effort to achieve settlement, including preparing for and participating in mediation and then, much later, conducting extensive additional settlement negotiations; preparing for trial; and preparing voluminous settlement documentation – all of which led to the Settlements.

Defendants liable as escrow agents under common law aiding and abetting theories for the Trustee's alleged mishandling of premium escrow funds in a broader overall scheme.  The Bank Defendants vigorously opposed Plaintiffs' theory of liability and denied Plaintiffs' claims, asserting that they simply held funds in accounts under the control of the Trustee - Livoti - and that they had no connection with MBC's alleged Ponzi scheme (which they say was based on the fraudulent understatement of viators' life expectancies).  The Bank Defendants asserted that they had the legal right to assume that individuals having the legal authority to handle their customers' accounts are not misusing the funds in such accounts.  The novelty, complexity and difficulty of the questions presented, and the persistence of Class Counsel, are demonstrated by the extensive briefing and argument required to overcome the Bank Defendants' motions and the Magistrate Judge's recommendations of dismissal.  The difficulty of the legal issues in this case was compounded by the difficulty in gathering and distilling all of the facts; evaluating the roles of each of some 50 defendants and others and pursuing appropriate claims; the long period of time covered by the scheme; the massive amount of documentation that had to be digested; and the demands upon Class Counsel to respond to Class Member inquiries, among other challenges.

  e. Class Counsel, Michael Hanzman and Victor Diaz, are extremely able and experienced lawyers with excellent reputations, which were demonstrated in their performance before the Court in this case.  The competence and experience of Class Counsel was a significant factor in obtaining the results achieved for the Class.  The outcome required not only that the skill of counsel be commensurate with the complexity of the issues in the case, but also that it be commensurate with the quality of the opposition, extremely well respected and skillful lawyers with tremendous

resources behind them, that demanded constantly rigorous advocacy of the highest quality from Class Counsel.

 f. Given the relatively small size of the firms representing the Class and the massive commitment of time and resources associated with accepting this representation, this case undoubtedly precluded Class Counsel from working on other matters.

 g. The requested fee is within the range of what may be considered customary. The requested fee also comports with the standard contingent fee amount found in the marketplace.

 h. This action was prosecuted by Class Counsel on a purely contingent basis, thereby assuming the risk of not being paid for a considerable amount of work over an extended period of time. The case against the Bank Defendants was highly risky; the financial outcome was uncertain; the issues were difficult and complex, and the legal and factual hurdles were many and substantial; the demands on Class Counsel, including the commitment to invest tremendous time and effort in order to pursue these claims, were daunting; and the case presented potential pitfalls that could have resulted in no recovery at all against the Settling Parties.

 i. The Settlements provide the Class with a substantial monetary recovery in addition to what has already been recovered from other defendants, and represent excellent results.

 26. Based on the foregoing analysis, the Court finds that an award of 30% of the $9,750,000 Settlement Fund ($2,925,000) in attorneys' fees and expenses is fair and reasonable in this case, and satisfies the guidelines of *Camden I*, especially in light of the complicated nature of the case; the obstacles presented; the tremendous amount of time, effort and skill required to create the common fund; and the excellent results obtained. Class Counsel have brought this case at the

risk of not being compensated, against significant odds, and have produced substantial benefits to the Class.

27. This award is also fair and reasonable when cross-checked under the lodestar approach. Under a lodestar approach, this case would undoubtedly justify a substantial enhancement, which is typically applied in recognition of considerations such as risk and the contingent nature of the fees, the magnitude and complexity of the litigation, the quality of the attorneys' performance, the benefits achieved, as well as the social and economic value of encouraging counsel to undertake matters that serve the public interest. Class Counsel's combined lodestar is $4,052,651. Granting the requested $2,925,000, even taking into account prior fee awards made to Class Counsel, the total fees awarded by this Court to date will correspond to approximately a 1.45 multiple of Class Counsel's total lodestar, which would fall well within the range of what has been deemed fair and reasonable.

28. The fee and expense award shall be paid exclusively from the Settlement Fund as provided in the Settlement Agreements.

29. The Court also notes that only 13 investors timely objected to the fee request, representing under .04% (.00039989) of the investor Class. The Court has reviewed all of these objections and all objections filed with the Court related to Class Counsel's fee and expense request are overruled.

### Miscellaneous

30. Any and all administrative expenses, including without limitation expenses related to the dissemination of the Notice or administration of the Settlement Fund, shall be paid out from the Settlement Fund. The Settlement Fund, after deducting the monies awarded in this Final

Judgment, shall be paid to the Receiver to be held earning interest until the Court approves a plan of allocation and distribution.

31. All claims alleged by Lead Plaintiffs and the Class against the Settling Parties are dismissed on the merits with prejudice, without fees or costs to any party, except as provided in the Settlement Agreements and approved by the Court.

32. Upon the Effective Date, the Releasees (as that term is defined in the Settlement Agreements) shall be deemed to have been released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, known or unknown, in law or in equity, which Releasors (as that term is defined in the Settlement Agreements), whether or not they make a claim on or participate in the Settlement Fund, ever had, now have or hereafter can, shall or may have, which relate to the subject matter of this Action, or which arise out of the Bank Defendants' dealings with MBC, MBC's Affiliates, Anthony Livoti, Jr. or Anthony Livoti, Jr., P.A.  The claims covered by the foregoing release, which include, but are not limited to, all claims that the Releasors brought or could have brought against the Releasees in the Action, are referred to as the "Released Claims."  Each Releasor shall not hereafter seek to establish liability against the Releasees based in whole or in part on any Released Claims.  All Class Members who have not timely and properly excluded themselves from the Settlement Class, as listed on Exhibit 1, are barred and enjoined from filing or continuing to prosecute any lawsuit, action, or arbitration in any jurisdiction based on or relating to the facts and circumstances underlying the Released Claims.

33. The Court further bars and enjoins any defendant in the Action (including settling and non-settling defendants) from commencing, prosecuting or asserting any claim for contribution or

indemnity against the Bank Defendants arising out of, or in any way related to, (i) the Action, or (ii) the Settling Parties' dealings with MBC, MBC's affiliates, Anthony Livoti, Jr, and Anthony Livoti, Jr. P.A., or (iii) any future action filed by the Receiver or the receivership entities; in addition, the Settling Parties shall be barred from commencing, prosecuting or asserting any claim for contribution or indemnity against any defendant in the Action (including settling and non-settling defendants) arising out of, or in any way related to, the Action, or the Settling Parties' dealings with MBC, MBC's Affiliates, Anthony Livoti, Jr, and Anthony Livoti, Jr. P.A.; in addition, notwithstanding any provision of Florida law to the contrary, the total damages awarded against the non-settling defendants as a result of a trial of this Action, or any related lawsuit, including but not limited to, any pending or future action filed by the Receiver, shall be reduced dollar-for-dollar up to the full amount of the Settlement Fund, or by another amount as ordered by the Court.

34. Without in any way affecting the finality of this Order and separate Final Judgment, this Court retains jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreements and of this Order and Final Judgment, and for any other necessary purpose.

35. Because there are multiple parties and claims presented in this case, the Court makes an express determination that there is no just reason for delaying the entry of this Order and Final Judgment, and therefore directs the immediate entry of this Order and separate Final Judgment.

DONE AND ORDERED in Chambers at Miami, Florida this 12th day of March, 2009.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of record